UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MANITOWOC MARINE GROUP LLC,

        Plaintiff,

   v.                                                            Case No. 03-C-0232

AMERON INTERNATIONAL CORP., *et al.*,

        Defendants.

**MEMORANDUM AND ORDER**

      Plaintiff Manitowoc Marine Group LLC and Defendant International Marine & Industrial Applicators, Inc., have moved for reconsideration of this court's Decision and Order of March 27, 2006, insofar as it dismissed that portion of Manitowoc's claim against Defendant Ameron International Corp. that arose out of unpaid invoices for which IMIA had given Manitowoc a release. Ameron opposes the motion. For the following reasons, the motion will be granted.

      The facts of this case have been set forth in detail in the court's earlier decisions. *E.g.*, *Manitowoc Marine Group LLC v. Ameron Int'l Corp.*, 424 F. Supp. 2d 1119, 2006 U.S. Dist. LEXIS 14088 (E. D. Wis. March 27, 2006). The parties' dispute arises out of paint delamination in the cargo tanks of a barge. Manitowoc built the barge, Ameron manufactured the paint, and IMIA applied the paint. When the paint delaminated soon after it was applied, Manitowoc undertook the repair in accordance with the warranty under its contract with the owner. Manitowoc hired IMIA on a time and material basis to reapply the paint, and then sued Ameron for breach of the express and implied warranties Ameron had allegedly given in connection with its sale of the

paint and IMIA for breach of contract. IMIA asserted a counterclaim against Manitowoc for payment of the outstanding invoices ($1.3 million) for the repair work and a cross-claim against Ameron for fraud.

After their respective experts concluded that fault for the delamination lay with Ameron, rather than with IMIA, Manitowoc and IMIA entered into a Settlement Agreement (Hanus Aff. (Docket #137), Ex. 12) pursuant to which they agreed to dismiss their claims against each other and split any recovery on their claims against Ameron 65% (IMIA) - 35% (Manitowoc). IMIA agreed that its right to collect from Manitowoc would be limited to its share of the recovery from Ameron and otherwise released Manitowoc from liability. (*Id.* § 4.)

Thereafter, Ameron moved for summary judgment on both Manitowoc's and IMIA's claims against Ameron. Ameron argued that in light of the Settlement Agreement, Manitowoc could not recover from Ameron the cost of the repair work, which Manitowoc had never paid IMIA. Ameron also argued that IMIA's fraud claim was barred by the economic loss doctrine. The court accepted both arguments and granted partial summary judgment in Ameron's favor. However, it left aside "the question of whether Manitowoc and IMIA could, by mutual agreement, rescind or reform their settlement agreement in such a way as to 'resurrect' the claim for the costs of IMIA's recoating work." 2006 U.S. Dist. LEXIS 14088 at *53 n. 8.

Manitowoc and IMIA have now executed an "Agreement to Rescind Settlement Agreement" rescinding their original Settlement Agreement and thus reinstating IMIA's claim against Manitowoc for the unpaid repair invoices. They have moved for reconsideration of the court's Decision and Order of March 27, 2006, insofar as it dismissed that portion of Manitowoc's claim against Ameron arising from the unpaid repair invoices. As part of their motion, Manitowoc and IMIA argue that the court misconstrued the original Settlement Agreement. Even if that were so,

2

Manitowoc and IMIA have rescinded that Settlement Agreement by means of the Agreement to Rescind. Since the original Settlement Agreement is no longer operative and because the court is not inclined to revisit an issue it has thoroughly considered, the court declines to reconsider its interpretation of it and will instead address the question of whether the Agreement to Rescind suffices to reinstate the portion of Manitowoc's claim against Ameron arising from the unpaid repair invoices.

Ameron argues that it does not. It contends as an initial matter that Manitowoc and IMIA, having lost at summary judgment, are not entitled to a "second bite at the apple" on this motion for reconsideration. As Ameron acknowledges, however, the court has the power to reconsider its earlier decisions when there has been a controlling or significant change in facts since the submission of the issue to the court. *Neal v. Honeywell, Inc.*, 1996 WL 627616, *3 (N.D. Ill.); *Quaker Alloy Casting Co.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988). Here, the execution of the Agreement to Rescind amounts to a significant change in facts since the court's Decision and Order of March 27. Accordingly, the court will consider its effect notwithstanding its earlier order on summary judgment.

Ameron argues that Manitowoc and IMIA cannot rescind the original Settlement Agreement once the rights of Ameron as a third-party beneficiary of that agreement have intervened. It cites *Auer v. Kawasaki Motors Corp.*, 830 F.2d 535 (4th Cir. 1987), and *Burns v. General Motors*, 950 F. Supp. 137 (D.C. Md. 1996), both cases applying Maryland law, in support of its argument. In *Auer*, the plaintiff collided with a garbage truck while riding his motorcycle. He sued both the truck driver and the manufacturer of the motorcycle. The plaintiff later settled with the driver and, as part of that settlement, executed a release in which he "forever discharge[d the driver] and all other persons, firms and corporations who might be liable of and from any and all actions . . . on account

3

of, or in any way growing out of . . . [the] accident." *Id.* at 536-537. The manufacturer amended its answer to assert the release as a defense and moved for summary judgment on the grounds of release. The plaintiff and the driver then executed a new contract rescinding the release. Nevertheless, the Fourth Circuit held that the language of the release evinced a plain, albeit perhaps inadvertent, intent to discharge the manufacturer. Following Restatement (Second) of Contracts § 311(3), the court held that the parties to the release lost the ability to rescind it once the manufacturer amended its complaint to assert the release as a defense. *See also Burns*, 950 F. Supp. at 138 (holding that when plaintiff had "release[d] and forever discharge[d defendant] and any other person, firm, or corporation charged or chargeable with responsibility or liability," parties could not revive claim against another defendant by executing amended release).

Whatever the rule may be in Maryland, the rule in Wisconsin is that "the parties to a release can agree to amend it to conform to their intention or more precisely[,] to exclude an effect they did not intend," even when that amendment reinstates a previously-dismissed claim against a third party. *Krenz v. Medical Protective Co.*, 204 N.W.2d 663, 666 (Wis. 1973). The plaintiff in *Krenz* fell down a flight of stairs and broke her ankle. She filed separate lawsuits against the stair owner and lessee and against the doctor who treated her broken ankle. Later she settled her suit against the stair owner and lessee and executed a settlement agreement releasing her claims against the owner, the lessee, and "all other persons, firms or corporations who are or might be liable." *Id.* at 667. The doctor moved for summary judgment on the basis of this release. The plaintiff and the owner/lessee thereafter reopened their case and executed an amended release removing the language that released the plaintiff's claims against the doctor. The Wisconsin Supreme Court held that the trial court had properly denied the doctor's motion for summary judgment based on the amended release.

4

Although the parties in *Krenz* reformed their agreement before the trial court actually ruled on the doctor's motion for summary judgment, that fact alone does not warrant a different conclusion. Given the inherent authority of the court to reconsider its interlocutory orders at any time, and the obviously inadvertent impact of their earlier effort to enter into a good faith settlement of their claims against each other, the court declines to treat its previous ruling as a bar to consideration of the issue. Just as in *Krenz*, the court concludes that Manitowoc and IMIA may obtain relief from their inadvertent release of Ameron on the basis of the Agreement to Rescind.

Ameron argues that even if it had no rights as a third-party beneficiary of the original Settlement Agreement, Manitowoc and IMIA are estopped from rescinding that agreement because Ameron relied on it in litigating this case. "Equitable estoppel may be applied when the inaction or action of a party induces reliance by another to that other person's detriment." *Nugent v. Slaght*, 638 N.W.2d 594, 599 (Wis. Ct. App. 2001). In other words, the party seeking to set up estoppel must establish that its position will suffer prejudice as a result of the other party's actions. *Active Co. v. Slate*, 103 N.W.2d 46, 48 (Wis. 1960). Ameron does not specify how its defense will be prejudiced if Manitowoc and IMIA are permitted to rescind the original Settlement Agreement. Discovery in this case closed on August 29, 2005; prior to March 27, 2006, Ameron did not know that the court would rule in its favor on its argument that the original Settlement Agreement precluded Manitowoc from recovering the amounts arising from the unpaid invoices. Ameron does not assert that it altered its discovery strategy in reliance on the original Settlement Agreement in such a way as to prejudice its other defenses against Manitowoc's claims. *See also Krenz*, 204 N.W.2d at 666 ("Dr. Sievers stands in no equitable position. He is an alleged independent tort-feasor liable for his wrongdoing. He did nothing to his damage in reliance on the original

5

release and therefore the original parties to the release are not precluded from amending the release without his consent to fully express their intent.").

Ameron finally argues that the Agreement to Rescind, even if effective, does not suffice to revive Manitowoc's claim, because John Arbizzani, IMIA's president, has guaranteed to make Manitowoc whole in the event that it cannot recover the repair invoice amount from Ameron. Arbizzani and Manitowoc executed a Limited Guaranty Agreement in conjunction with the Agreement to Rescind. This Limited Guaranty Agreement, like the Agreement to Rescind, evidences no intent to benefit Ameron. Arbizzani did not undertake to answer for the debt for which Manitowoc seeks recovery from Ameron. The relevant language of the Limited Guaranty Agreement provides as follows:

> The parties hereto agree that Arbizzani shall hold Manitowoc Marine harmless as to any damages or losses Manitowoc Marine has suffered or suffers (including any amounts owed to IMIA as a result of the warranty work performed by IMIA) to the extent that it is determined that: (a) the cause of the failure of the coating resulted from application error or (b) Ameron's product, instructions or actions/omissions were not the cause of the failure.

To the extent that the delamination at issue in this case resulted from application error, IMIA, rather than Ameron, will be responsible to Manitowoc. Likewise, to the extent that Ameron's product, instructions, actions, or omissions were not the cause of the failure, Ameron will not be liable to Manitowoc. Arbizzani has thus given Manitowoc a guaranty only against losses for which Ameron cannot be held liable. Nothing about this guaranty defeats Manitowoc's claim against Ameron.[1]

---

[1] Nor, in light of the Agreement to Rescind, can the court accept Ameron's argument that IMIA, rather than Manitowoc, is the real party in interest in Manitowoc's claim against Ameron. As Ameron successfully argued in its previous motion for summary judgment, IMIA has no claim against it. With the original Settlement Agreement having been rescinded, IMIA's claim against Manitowoc for its unpaid invoices is revived and, thus, Manitowoc's claim against Ameron for the cost of the repair work performed by IMIA is revived as well.

6

**IT IS THEREFORE ORDERED** that the joint motion for reconsideration (Docket #172) is hereby **GRANTED.** The court's Decision and Order of March 27, 2006, is **VACATED** to the extent that it granted summary judgment in favor of Ameron on that portion of Manitowoc's claims arising from the unpaid repair invoices.

Dated this   28th   day of June, 2006.

                                      s/ William C. Griesbach
                                      William C. Griesbach
                                      United States District Judge